0853

Adolph ARAUJO, Respondent v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellant.

(351 S. E. (2d) 908)

Court of Appeals

---

*A. Camden Lewis,* Columbia, *Hugh L. Willcox, Jr.* of *Willcox, Hardee, McLeod, Buyck & Baker,* Florence, and *Fred A. Walters,* of *Southern Bell Tel. & Tel. Co.,* Columbia, *for appellant.*

*David W. Keller, Jr.,* of *McGowan, Keller, Eaton, Brodie & Elmore,* and *James T. McBratney, Jr.,* of *Rogers and McBratney,* Florence, *for respondent.*

Heard Oct. 20, 1986.

Decided Dec. 29, 1986.

GARDNER, Judge:

In this action Adolph Araujo (Araujo) alleges that Southern Bell Telephone and Telegraph Company (Southern Bell) negligently reported to June and George Gibson that he had made harassing, hang-up calls to their home and negligently failed to report the erroneous tracing to him before turning the information over to the police. The jury returned a verdict against Southern Bell for $25,000. We reverse and remand.

In March of 1983, June and George Gibson complained to Southern Bell that they had been receiving harassing, nonverbal, hang-up type telephone calls and requested Southern Bell to trace the calls. Southern Bell placed tracing equipment on the Gibson line. On March 26, 1983, the Gibsons received 29 hang-up phone calls; Southern Bell allegedly traced 28 of them to Araujo's home phone; of interest, the 29th was traced to McLeod's Medical Center in Florence,

S. C., where Araujo's wife was employed.

Mr. Crawford, supervisor of Southern Bell's Annoyance Call Center, testified that after the completion of a tracing operation, it was Southern Bell's internal policy to attempt to contact a responsible person at the residence of the offending line and advise that person that harassing telephone calls had been traced to that residence. Mr. Crawford referred to these calls as deterrent calls and testified that the purpose was to bring about an end to the harassing calls and also to avoid the possibility of law enforcement officials becoming involved. Mr. Crawford testified that he made such a call on March 28, 1983, and advised Mrs. Araujo of the harassing calls; she denied having received the call from Mr. Crawford.

It was also Mr. Crawford's testimony that if the offended party requested that the results of the tracing operation be turned over to the police, a deterrent call was not made.

More than five months later, on September 2, 1983, Mr. Gibson again reported that he was receiving harassing, hang-up phone calls. Southern Bell again placed the tracing equipment on Gibson's telephone line and on September 8 a hang-up type phone call was traced to Araujo's residential phone.

On September 12, 1983, Mr. Gibson requested Southern Bell to disclose to the police the results of its tracing operation; on the same day the Gibsons filed a complaint with the Florence County Sheriff's Department. Eight days later, on September 20, 1983, Southern Bell disclosed to the Florence County Sheriff's Department the numbers and listings from which, according to its tracing operation, the harassing calls emanated; Southern Bell did not advise the Sheriff's Department or the Gibsons that a particular person made the calls.

Araujo's complaint in the negligence action specifies as acts of negligence (1) the negligent disclosure by Southern Bell to the Gibsons that Araujo had made the harassing calls and (2) the negligent failure of Southern Bell to notify Araujo of the results of the tracing operation prior to reporting it to the police. The complaint then alleges as a second cause of action that by the two acts of negligence Southern Bell negligently breached a contractual relationship between Araujo and Southern Bell.

The pertinent issues presented by Southern Bell's exceptions are whether the trial judge erred in not granting Southern Bell's timely motions for involuntary non-suit, directed verdict and a new trial absolute on the grounds that (1) there was no evidence that Southern Bell had notified the Gibsons that Araujo had made the harassing calls and (2) Southern Bell had no duty, by contract or otherwise, to notify Araujo of the results of the tracing operation prior to notifying the police authorities.

Because the specifications of negligence in the negligence action are the foundation for both the negligence action and the breach of contract action, the two issues presented will be addressed concurrently.

We first hold that there is no evidence that Southern Bell disclosed to Mr. and Mrs. Gibson the telephone numbers or the listings of the numbers from which the harassing phone calls were allegedly made. The evidence shows that Southern Bell only disclosed to the police authorities the numbers and the listings from which the calls allegedly emanated. We also hold that the record discloses that Southern Bell never disclosed to anybody that a particular individual was placing the calls.

While citing no authority that a telephone company has a duty to report to an offending party the results of a tracing operation prior to reporting the results to the police, Araujo argues that our Supreme Court has recognized that a self-imposed rule may constitute evidence of negligence and that perforce of this rule Southern Bell's custom of reporting a tracing operation to the offending line created a duty owed by Southern Bell to Araujo. To support this argument, Araujo relies on a line of cases beginning with *McCormick v. Columbia Electric Street Railway Light and Power Co.*, 85 S. C. 455, 67 S. E. 562 (1910). And these cases do hold that company rules are admissible as evidence of negligence, but at the same time all authorities cited by Araujo concede that the question of whether a defendant owes a duty, the breach of which may constitute negligence, is a question of law, not of fact.

There is no formula for determining duty; a duty is not sacrosanct in itself but only an expression of the sum total of those considerations of policy which lead

the law to say that a particular plaintiff is entitled to protection.[1] Suffice it to say that a multiplicity of factors come into play when courts contemplate the question of duty. These factors include the policy of deterring future tortfeasors, the moral culpability of the tortfeasor and numerous other conceivable factors; duty is seen in general terms as requiring a person or corporation to conform his or its conduct to a standard which is adequate to protect others from unreasonable risk of harm.

In addressing the question before us, we are not unmindful that harassing, hang-up type telephone calls are misdemeanors. *See* Section 16-17-430, Code of Laws of South Carolina (1976). To hold that Southern Bell has a duty to notify an offender under this section prior to notifying the police could obviously impede enforcement; this court is not prepared to make such a ruling.

After careful consideration, it is this court's opinion that Southern Bell had no duty to disclose to Araujo the results of its tracing operation and we so hold. The trial judge therefore erred in failing to direct a verdict in Southern Bell's favor.

For the reasons stated, the appealed judgment is reversed and the case is remanded by entry of judgment in favor of Southern Bell.

Reversed and remanded.

SANDERS, C.J., and SHAW, J., concur.

---

[1] For a thorough discussion of the law of duty and its development in the common law, see Prosser and Keaton *On the Law of Torts*, Chapter 9, Section 53, (5th ed. 1984).